# In the United States Court of Federal Claims

No. 12-841 C
(Filed: May 15, 2013)

FILED
MAY 15 2013
U.S. COURT OF
FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| BRIAN CHARLES VAETH, | * |
|  | * |
| Plaintiff, | * |
|  | * |
| v. | * |
|  | * |
| THE UNITED STATES, | * |
|  | * |
| Defendant. | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Brian Charles Vaeth*, Nottingham, MD, Plaintiff, pro se.

*Luke A. E. Pazicky*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION

**DAMICH**, Judge:

At the heart of the claims in the case at bar are allegations of unfairness and politically motivated bias on the part of the United States Department of Energy ("DOE") with respect to awards of federal funding for alternative energy projects pursuant to various DOE initiatives and programs. Plaintiff, Brian Charles Vaeth, contends that his submissions to DOE pursuant to these programs to obtain government funding for a solar energy panel design endeavor were unlawfully rejected and/or discouraged.

As a consequence of this alleged misconduct, Plaintiff asserts four causes of action: violation of the Competition in Contracting Act (Count I), unlawful applicant selection (Counts II and III), and violation of the Sherman Act and Federal Trade Commission regulations (Count IV). Pl.'s Am. Compl. at 10. Plaintiff seeks preliminary and permanent injunctions against DOE relating to its funding programs as well as damages in the amount of $2,500,000.00. *Id.* at 11.

The United States initially argues for dismissal of Plaintiff's complaint in its entirety on the grounds that Plaintiff lacks constitutional standing to pursue his claims. Defendant further seeks dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") and/or for

failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6), or, in the alternative, summary judgment. Mot. to Dismiss at 1 ("Def.'s Mot."). The principal thrust of Defendant's argument for 12(b)(1) dismissal is that Plaintiff's invocation of this Court's jurisdiction under 28 U.S.C. § 1491(b)(1) is unavailing because his claim does not arise "in connection with a procurement or a proposed procurement." *Id.* at 17. Defendant's motion to dismiss Plaintiff's complaint is GRANTED for the reasons set forth below.

I.  Background

Plaintiff Brian Charles Vaeth is a resident of the state of Maryland and describes himself as a "highly experienced energy system designer" and entrepreneur. Pl.'s Am. Compl. at 3. He advises that he "currently holds intellectual property relating to improving the efficiency of solar panels" and that, in 2008, he "brought to the attention of" DOE a design for a solar panel that "increased generating capacity by keeping the units cool and controlling the internal temperature." *Id.* His company,[1] he avers, "provides alternative energy solutions for residential and commercial customers." *Id.*

In his amended complaint, Plaintiff relates that he submitted "several applications for grants and/or loan guarantees under various programs." *Id.* Although he generally references the American Recovery and Reinvestment Act ("ARRA"), *see* American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, Div. B, tit. I, § 1603, 123 Stat. 115, 364, as amended, 26 U.S.C. § 48, and an unspecified DOE loan guarantee program of the Energy Policy Act of 2005, the only specific financial assistance program that he suggests he applied for is DOE's SunShot Initiative. Am. Compl. at 7-8. With respect to that program, he asserts that, in 2011, "Brian Charles Vaeth, d/b/a Nuera Energy Company at that time, submitted an application for funding under the program which was denied by the DOE without explanation." *Id.* at 7.

With respect to ARRA, he relates that, although he "sought to obtain funding under the ARRA," he "was discouraged from continuing with the application process by the *Department of Energy*." *Id.* at 6 (emphasis added). The context of this statement in his amended complaint suggests that he did not in fact submit any grant or loan guarantee application to *DOE* pursuant to ARRA. Even so, he explained that he planned to accomplish "the intent of the DOE SunShot Initiative by using anticipated corporate profits and incentives available" under other federal and/or state programs to keep down "the system cost" and make his technology cheaper. *Id.* at 7. One such program he references was the Department of the Treasury's Section 1603 grant program, "Payments for Specified Energy Property in Lieu of Tax Credits" ("Section 1603 program"). Confusingly, in his response to Defendant's motion to dismiss, however, Plaintiff for the

---

[1] Accompanying his original complaint, wherein the plaintiff was styled V & W Global Energy Corporation, was an application to proceed in forma pauperis by Mr. Vaeth personally, in which he averred that he has no employment income and generally had no income of any sort for the preceding 12 months. The Government filed no response to Mr. Vaeth's application and the court will accept at face value that Plaintiff is accordingly unable to pay the filing fee for his complaint. His motion to proceed in forma pauperis is therefore granted on that basis.

first time specifically averred that he "began the process of applying for a grant under the *US Treasury Department*'s Section 1603, 'Grant in Lieu of Future Tax Credits' and a loan guarantee under Section 1705, 'Loan Guarantee for Specified Energy Projects' for the La Vale project." Reply in Opp'n to Def.'s Mot. to Dismiss at 4 (emphasis added).[2] He asserts that the Treasury Department "never responded to Plaintiff's request" nor did he receive any assistance from the Department of Energy or the Department of the Treasury in the preparation of the "applications submitted." *Id.*

With respect to the DOE SunShot Initiative, Defendant has submitted declarations attached to its motion to dismiss attesting that neither Mr. Vaeth nor his various associated business entities "[]ever applied for a DOE loan guarantee or grant under the SunShot initiative." Def.'s Mot. at 3.[3]

In the course of its inquiry regarding Plaintiff's claims, however, Defendant ascertained that "Nuera Global Energy Services Corporation" (hereinafter "Nuera")[4] had submitted a letter of intent and a concept paper in 2011 in response to a funding announcement regarding DOE's Innovative Manufacturing Initiative ("IMI"). Def.'s Mot. at 3-4. This was a funding program, distinct from the SunShot Initiative cited in Plaintiff's Amended Complaint, "for research and development projects that could develop transformational manufacturing processes and materials technologies to advance the clean energy economy." *Id.*, App. 6 (Prymak Decl., ¶ 6).

Defendant explains that, in June 11, under IMI, DOE issued Funding Opportunity Announcement DE-FOA-0000560 ("Funding Announcement 560"), which consisted of several phases. In the first phase, grant seekers had to submit letters of intent by September 1, 2011. In the next phase, the prospective applicant was required to submit a "concept paper" by September 22, 2011. In response to the concept paper, DOE would encourage or discourage grant seekers to submit a full application, which was the final phase of the application process. Mr. Vaeth's concept evidently did not pass muster. "The Concept Paper review team 'discouraged' Nuera Global Energy Services Corporation from submitting a Full Application and notified it of this." *Id.*, App. 7 (Prymak Decl., ¶ 8).

---

[2] Plaintiff's "Reply in Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction or for Failure to State a Calim [sic] upon Which Relief Can be Granted, or, in the Alternative, for Summary Judgment" is not paginated in the text of his response (although his attachments thereto are paginated). The court will cite to the pages of the text of his response as if the pagination has been supplied, with the page entitled "Summary of the Case" beginning as page 1.

[3] These entities were: "V&W Global Energy Corporation," "Nuera Company," "Nuera Energy Company," "Nuera Global Energy Services Corporation," and "Nuera Global Energy Company." Def.'s Mot. at 3.

[4] Plaintiff originally filed this complaint in the name of a corporate entity, V&W Global Energy Corporation. Advised by the court that he could not prosecute his complaint pro se on behalf of a corporate entity under the court's rules, he amended his complaint to reflect himself as the plaintiff. It is uncertain whether Nuera Global Energy Services Corporation, the entity that submitted the letter of intent and concept paper for the IMI program, is actually a corporate entity or merely Mr. Vaeth's unincorporated alter ego. To the extent it is, or was, a corporate entity, Mr. Vaeth is not empowered to pursue any claim pro se regarding Nuera's application for a grant under the IMI program.

Discouraged grant seekers could nevertheless proceed to the third phase, regardless of having been formally discouraged, by submitting a full application, which consisted of a detailed project narrative, budget request with supporting documentation, letters of commitment, and related documents detailed in Funding Announcement 560. Twenty-seven discouraged grant seekers submitted full applications, of which three were recommended for funding by the Merit Review Committee, and of which one was made an award of funds. *Id.* (Prymak Decl., ¶ 9). Nuera did not submit a full application and thus was precluded from receiving, or even being considered for, a grant award under the IMI. *Id.* (Prymak Decl., ¶ 7).

In his response to Defendant's motion to dismiss, Plaintiff fails even to dispute, much less contest, Defendant's assertion that Plaintiff never applied for a loan guarantee or grant under DOE's SunShot Initiative. Regarding ARRA, Plaintiff's assertion in his response that he "began" the process of seeking a grant "under the US Treasury Department's Section 1603" and a loan guarantee under an unexplained "Section 1705" is buttressed only by the reference to an Exhibit 1, attached to his response. Pl.'s Resp. at 4. "Exhibit 1," however, consists only of copies of *DOE* emails apparently sent to Mr. Vaeth in the fall of 2011 regarding the *IMI* application process.

In its reply, Defendant has submitted a declaration of the Treasury Department's Section 1603 Program Manager attesting that "there is no record of Brian Vaeth or his associated companies ever submitting an application" for a payment under the Section 1603 Program. Def.'s Reply, App. 2 (Neubauer Decl., ¶ 5).

Underlying Plaintiff's complaint is his allegation that "the process has not been fair, as investigations have shown that companies such as Solyndra, Evergreen Solar, Beacon Power, and a host of other companies gave political contributions to politicians and received taxpayer loans and grants in return. Plaintiff seeks a fair re-review, in a transparent manner, for inclusion in these programs." In addition to such "re-review," Plaintiff alleges "intentional and malicious behavior" and seeks "damages in an amount commensurate with the losses incurred, as a result of the Department of Energy's unlawful acts."

II.  Legal Standards

It is well-established that subject-matter jurisdiction is "a threshold issue . . . and a court must satisfy itself that it has jurisdiction to hear and decide a case before proceeding to the merits." *PIN/NIP, Inc. v. Platte Chemical Co.*, 304 F.3d 1235, 1241 (Fed. Cir. 2002) (internal citations omitted). When jurisdiction is challenged, the inquiry thus goes not to whether a plaintiff will ultimately prevail, but whether this court has jurisdiction to hear the matter in the first instance. *See Patton v. United States*, 64 Fed. Cl. 768, 773 (2005) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of

announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868).

In weighing a motion to dismiss for lack of subject-matter jurisdiction, the Court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in [the] plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). When a 12(b)(1) motion to dismiss raises a factual challenge to a court's jurisdiction, however, "the allegations in the complaint are not controlling, and only uncontroverted factual allegations are accepted as true for purposes of the motion." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993) (internal citations omitted). "All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to factfinding" by the court. *Id.* "In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony." *Id.* It is, furthermore, the plaintiff's burden to demonstrate jurisdiction by a preponderance of the evidence. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

When a party is acting pro se, courts generally accord the party greater leeway than if he or she had professional representation. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"); *Forshey v. Principi*, 284 F.3d 1335, 1357 (Fed. Cir. 2002) (en banc).

"While a court should be receptive," however, "to pro se plaintiffs and assist them," it must not cross the line between finder of fact and advocate. *Demes v. United States*, 52 Fed. Cl. 365, 369 (2002). Moreover, "the leniency afforded to a *pro se* litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." *Minehan v. United States*, 75 Fed. Cl. 249, 253 (2007) (citing *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987)).

The subject matter jurisdiction of the United States Court of Federal Claims is established by the Tucker Act, 28 U.S.C. § 1491, which provides, in relevant part:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Tucker Act itself, however, "does not create substantive rights. Rather, it is a jurisdictional provision 'that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts).'" *Holmes v. United States*, 657 F.3d 1303, 1309 (Fed. Cir. 2011) (quoting *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009)).

The Federal Circuit has explained that the substantive right must stem from another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbour, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed. Cir. 1994). The "other source of law," however, "need not *explicitly* provide that the right or duty it creates is enforceable through a suit for damages, but it triggers liability only if it 'can fairly be interpreted as mandating compensation by the Federal Government.'" *Holmes*, 657 F.3d at 1309 (quoting *Navajo Nation*, 556 U.S. at 290).

Even where subject matter jurisdiction over a claim has been established, the claim may be subject to dismissal for "failure to state a claim upon which relief can be granted," pursuant to RCFC 12(b)(6). The allegations of the complaint are construed favorably to the pleader, *Scheuer*, 416 U.S. at 236, but the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

III.   Discussion

As an initial matter, Defendant argues for dismissal of Plaintiff's complaint in toto because he lacks constitutional standing to pursue his claims.

Article III of the United States Constitution limits the judicial power of federal courts to "cases" and "controversies." U.S. Const., Art. III, § 2, cl. 1. The doctrine of standing, as a landmark circumscribing the boundaries of judicial power under "the Constitution's central mechanism of separation of powers," is derived from the "cases and controversies" limitation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). Thus, "'[s]tanding is a threshold jurisdictional issue that implicates Article III of the Constitution.'" *Hoopa Valley Tribe v. United States*, 597 F.3d 1278, 1283 (Fed. Cir. 2010) (quoting *S. Cal. Fed. Sav. & Loan Ass'n v. United States*, 442 F.3d 1319, 1328 (Fed. Cir. 2005). "Those who do not possess Art. III standing may not litigate in the courts of the United States." *Valley Forge Christian Coll. v. Americans United for Separation of Church and State*, 454 U.S. 464, 475-76 (1982).

"'[T]he irreducible constitutional minimum of standing contains three elements': injury in fact, causation, and redressability." *Hoopa*, 597 F.3d at 1283 (quoting *Lujan*, 504 U.S. at 560-61). These requirements foreclose "the conversion of courts of the United States into judicial versions of college debating forums" or "publicly funded

forums for the ventilation of public grievances." *Valley Forge*, 454 U.S. at 473. Accordingly, a plaintiff must show "that he personally has suffered some actual or threatened injury as a result of the putative illegal conduct of the defendant." *Id.* at 472. An "abstract" injury does not suffice to establish standing. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).

It is evident that Plaintiff never applied for a loan guarantee or grant under DOE's SunShot Initiative. The declarations that Defendant has filed attesting that Mr. Vaeth never filed any application under that program have gone unchallenged by Plaintiff. Defendant has established the same with respect to the Section 1603 program of the Department of the Treasury.

All that Plaintiff has credibly alleged is that he submitted a letter of intent and a follow-up concept paper for consideration under DOE's IMI program pursuant to Funding Announcement 560. Not having been encouraged to pursue his interest, he chose to forego the submission of a full application in the final, and requisite, phase of that program. Mr. Vaeth thus falls well short of the concrete and particularized injury necessary to convey Article III standing. His injury is at most hypothetical and conjectural, just the sort of generalized public grievance that more properly ought to be aired elsewhere than in the federal courts.

This court, therefore, is without jurisdiction to consider the merits, if any, of his complaint. As Mr. Vaeth is without standing to pursue his claims, the court finds it unnecessary to delve into the Government's further argument that the court lacks subject matter jurisdiction because there is no procurement of goods or services inherent in the grant and loan guarantee programs at issue.

IV. Conclusion

Plaintiff lacks standing to pursue his claims; Defendant's motion to dismiss is granted. The Clerk of Court shall enter judgment accordingly.

EDWARD J. DAMICH
Judge